People v Fisher (2023 NY Slip Op 06172)

People v Fisher

2023 NY Slip Op 06172

Decided on November 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 30, 2023

113505
[*1]The People of the State of New York, Respondent,
v
Allen Fisher, Appellant.

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

D.J. & J.A. Cirando, PLLC, Syracuse (John A. Cirando of counsel), for appellant.
Gary M. Pasqua, District Attorney, Canton (Matthew L. Peabody of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of St. Lawrence County (Derek P. Champagne, J.), rendered November 9, 2021, upon a verdict convicting defendant of the crime of assault in the second degree.
Defendant was charged by indictment with assault in the second degree. After a jury trial, defendant was convicted and was sentenced to a prison term of five years to be followed by 1½ years of postrelease supervision. Defendant appeals.
Defendant contends that the evidence is legally insufficient to prove his guilt, and that the verdict is against the weight of the evidence. Defendant's legal insufficiency challenge is unpreserved for our review as defendant's general motion for a directed verdict for failure to establish "a prima facie case with regards to all of the elements" was not specifically directed at the challenges he raises on appeal (see People v Velett, 205 AD3d 1143, 1143 [3d Dept 2022], lv denied 39 NY3d 988 [2022]; People v Robinson, 183 AD3d 1118, 1119 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]). "Nevertheless, in reviewing whether the verdict is against the weight of the evidence, this Court necessarily must ensure that the People proved each element of the crime beyond a reasonable doubt" (People v Hajratalli, 200 AD3d 1332, 1333 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 1033 [2022]; see People v Porter, 184 AD3d 1014, 1015 [3d Dept 2020], lv denied 35 NY3d 1069 [2020]). "When undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Hadlock, 218 AD3d 925, 926 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 997 [2023]; see People v Santiago, 206 AD3d 1466, 1467 [3d Dept 2022]). As relevant here, "a person is guilty of assault in the second degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person" (Penal Law § 120.05 [1]), and serious physical injury is a "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]).
The evidence adduced at trial establishes that defendant's former [FN1] paramour and her friends went out dancing and drinking on the evening of October 19, 2019. While she was at a bar, the paramour saw her former boyfriend (hereinafter the victim) who then joined the group as the party continued socializing at two additional bars. In the early morning hours of October 20, 2019, the paramour, the paramour's friend and the victim returned [*2]to the paramour's house. There they conversed with the paramour's daughter, after which the paramour and the victim retired to her bedroom. Shortly thereafter, defendant arrived at the house and let himself inside. He was met by the daughter, who asked him why he was there. Defendant stated he was checking on her mother to make sure she made it home safely. The daughter testified that she advised defendant that her mother was fine and asked defendant to leave. When defendant insisted on seeing her mother, she ran upstairs to tell her mother that defendant was there. The paramour testified that she quickly got dressed and tried to lock the bedroom door, but before she could do so, defendant pushed the door open causing her to fall to the ground. Both the paramour and the victim testified that defendant went to the victim,[FN2] placed his leg on the victim's chest and punched him three times in the face, then turned to the paramour, yelled that she was responsible for the incident and left the house.
The victim further testified that the paramour immediately drove him to the Claxton-Hepburn Medical Center emergency room where his forehead was sutured. He was then transported to Upstate University Hospital and underwent a surgery which necessitated the insertion of two plates and screws into his lower left jaw. He further averred that since the incident, and as a result thereof, he has had to undergo two additional surgeries. The victim averred that he has a scar above his right eye, no feeling in his jaw, cannot breathe out of his right nostril, has blurred and double vision and reoccurring headaches and nightmares.
An otolaryngologist with Upstate University Hospital testified that he was on call at the hospital on October 20, 2019, and the victim was his patient. He stated that the victim had several facial fractures including his right cheekbone, right forehead, right orbital and left lower jawbone and that the injuries were consistent with blunt force trauma.[FN3] He further testified that the nature of the injuries suggest that the victim received trauma to more than one location of his face, and that said injuries were likely the result of multiple impacts, although it was possible that they could have been instigated by one blow if the blow had caused the victim to hit against something else. A second otolaryngologist testified that he performed surgery on the victim's orbital floor because the victim's facial anatomy shifted into his sinus.
Defendant testified that he and the paramour were in a relationship, and on the night of October 19, 2019 she had told him that she was going out with friends to listen to a band. Defendant texted her several times to ensure that she made it home and she did not respond. Therefore, he drove to her house to check on her and let himself inside. He admitted that he first encountered the daughter and that she advised him that her mother was fine and told him to leave the premises. Rather than heed that instruction[*3], he went upstairs to the paramour's bedroom and pushed the door open. Unbeknownst to him, the paramour was standing behind the door and fell to the floor. Defendant looked to the left and saw the victim lying in the bed, naked. He alleged that he started yelling at the paramour, when out of the corner of his eye he saw the victim step toward him and begin to throw a punch at him. He blocked the punch with a slap to the victim's forearm and countered with a single blow to the right side of his cheekbone, causing the victim to fall back onto the bed. He confirmed that as he left the bedroom, he yelled at the paramour "it's your fault."
A different verdict would not have been unreasonable in light of the contrary testimony and defendant's argument that he acted in self-defense. However, we find no merit to defendant's claim that the witnesses' testimony should be discredited due to their intoxicated state on the night of the incident, as "[a]ll of these witnesses were thoroughly cross-examined and any aspect of their testimony that could have been perceived as inconsistent was fully explored and presented to the jury, which was entitled to credit their testimony" (People v Velett, 205 AD3d at 1145 [internal quotation marks, ellipsis and citation omitted]; see People v Rosario, 157 AD3d 988, 990 [3d Dept 2018], lv denied 31 NY3d 1121 [2018]). Defendant's contention that the People failed to establish the requisite intent to cause serious bodily harm is unpersuasive. Defendant's intent may be inferred from his actions, words and the surrounding circumstances (see People v McLean, 128 AD3d 1106, 1108 [3d Dept 2015], lv denied 25 NY3d 1204 [2015]; People v Pine, 126 AD3d 1112, 1114 [3d Dept 2015], lv denied 27 NY3d 1004 [2016]) and "need not exist for any length of time prior to the moment of the prohibited act" (People v Nicholson, 97 AD3d 968, 969 [3d Dept 2012] [internal quotation marks and citation omitted], lv denied 19 NY3d 1104 [2012]). Here, the jury was free to reject defendant's argument of self-defense and accept the testimony of the victim and the paramour that defendant repeatedly punched the victim in the face while he was lying on the bed. Accordingly, we are satisfied that defendant possessed the requisite intent to cause serious physical injury to the victim. Furthermore, where there are competing inferences to be drawn as to whether defendant punched the victim one or three times, such conclusion is within the exclusive domain of the finders of fact and will not be disturbed by this Court (see People v McLean, 128 AD3d at 1108; People v Brown, 100 AD3d 1035, 1037 [3d Dept 2012], lv denied 20 NY3d 1009 [2013]). Upon viewing the evidence in a neutral light and deferring to the jury's credibility assessments, we conclude that the verdict is not against the weight of the evidence (see People v Watson, 174 AD3d 1138, 1140 [3d Dept 2019], lv denied 34 NY3d 955 [2019]; People v Gill, 168 AD3d 1140, 1142 [3d Dept 2019]).
Defendant next asserts [*4]that his constitutional right to a speedy trial was denied. However, "defendant failed to preserve this issue for appellate review because he never made such a challenge before County Court" (People v Martin, 81 AD3d 1178, 1179 [3d Dept 2011] [citations omitted], lv denied 17 NY3d 819 [2011]; see People v Votaw, 190 AD3d 1162, 1164 [3d Dept 2021], lv denied 36 NY3d 1101 [2021]; People v Grays, 179 AD3d 1149, 1150 [3d Dept 2020]).
We are unpersuaded by defendant's contention that County Court should have precluded the testimony of the second otolaryngologist because it was cumulative and constituted impermissible bolstering of the first otolaryngologist's testimony. "The admissibility of expert testimony is left primarily to the discretion of the trial court and, absent an abuse of discretion, that decision should not be disturbed" (People v Werkheiser, 171 AD3d 1297, 1303 [3d Dept 2019] [citations omitted], lv denied 33 NY3d 1109 [2019]; see People v Hansson, 162 AD3d 1234, 1237 [3d Dept 2018], lv denied 32 NY3d 1004 [2018]). When determining defendant's motion to preclude at trial, County Court agreed with defendant that the second otolaryngologist's testimony as to the issue of causation would likely be cumulative and impermissible bolstering of the first otolaryngologist's testimony. In order to avoid this, County Court limited the second otolaryngologist's testimony solely to the surgery he performed on the victim. While defendant urges that the second otolaryngologist's testimony included duplicative information related to the abnormality of the victim's nasal cavity, a review of the testimony given reveals that any such testimony was very brief. As the testimony of a second, successive surgery was relevant and not duplicative, we cannot conclude that County Court abused its discretion in admitting such testimony (see People v Hajratalli, 200 AD3d at 1339; People v Hughes, 114 AD3d 1021, 1023-1024 [3d Dept 2014], lv denied 23 NY3d 1038 [2014]).
Defendant challenges his sentence as harsh and excessive. Although defendant has no previous criminal history, given the victim's serious injuries and the brutal nature of the attack, we do not find the sentence imposed to be unduly harsh or severe (see CPL 470.15 [6] [b]; People v Spencer, 219 AD3d 981, 983 [3d Dept 2023]; People v Murray, 209 AD3d 1058, 1059 [3d Dept 2022]).
Garry, P.J., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Defendant steadfastly maintains that she was his present, as opposed to former, paramour at the time of the incident. For purposes of this appeal, the distinction is irrelevant.

Footnote 2: The victim testified that he was lying on the bed naked, under the covers, and was unable to defend himself.

Footnote 3: The doctor also testified that blunt force trauma is any force by an object not sharp enough to penetrate the skin but with sufficient force to cause a fracture and that a punch would be an example of blunt force trauma.