People v Strange (2026 NY Slip Op 01561)

People v Strange

2026 NY Slip Op 01561

Decided on March 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 19, 2026

CR-23-2057
[*1]The People of the State of New York, Respondent,
vTravis R. Strange, Appellant.

Calendar Date:January 12, 2026

Before:Garry, P.J., Clark, Pritzker, Powers and Corcoran, JJ.

D.J. & J.A. Cirando, PLLC, Syracuse (John A. Cirando of counsel), for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Kaylan Porter, New York State Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the County Court of Chemung County (Ottavio Campanella, J.), rendered August 18, 2023, convicting defendant following a nonjury trial of the crimes of criminal possession of a weapon in the fourth degree (two counts), criminal possession of a weapon in the third degree, assault in the second degree and menacing in the second degree.
Defendant was charged by indictment with two counts of criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree, assault in the second degree, menacing in the second degree and criminal mischief in the fourth degree stemming from an incident in November 2021 during which defendant, among other things, assaulted the victim and pointed a loaded pistol at her face. Defendant waived his right to a jury trial and, after a nonjury trial, was acquitted of both counts of criminal possession of a weapon in the second degree (counts 1 and 2), but convicted of the lesser included offenses of criminal possession of a weapon in the fourth degree as well as criminal possession of a weapon in the third degree (count 3), assault in the second degree (count 4) and menacing in the second degree (count 5).[FN1] Defendant was sentenced to a prison term of 1½ to 4½ years on the conviction of criminal possession of a weapon in the third degree, a concurrent prison term of 4½ years, to be followed by three years of postrelease supervision, for the assault conviction and to concurrent one-year jail terms on the other three convictions. Defendant appeals.
Defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of evidence. Initially, inasmuch as defendant affirmatively requested that the lesser included offenses of criminal possession of a weapon in the fourth degree be charged for counts 1 and 2, he has forfeited his challenge to the legal sufficiency of these convictions (see People v Branton, 238 AD3d 1429, 1430 [3d Dept 2025]; People v Gill, 20 AD3d 434, 434 [2d Dept 2005]). Nevertheless, because defendant also argues that the verdict is against the weight of the evidence, "we necessarily consider whether all of the elements of the charged crimes were proven beyond a reasonable doubt" (People v Mazzeo, 202 AD3d 1279, 1280-1281 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1072 [2022]; accord People v Branton, 238 AD3d at 1430).
As relevant here,"[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses any firearm" (Penal Law § 265.01 [1]). Also as charged here, "[a] person is guilty of criminal possession of a weapon in the third degree when . . . [s]uch person commits the crime of criminal possession of a weapon in the fourth degree as defined in [Penal Law § 265.01 (1)], and has been previously convicted of any crime" (Penal Law § 265.02 [1]). Additionally, "[a] person is guilty of assault in the second degree when . . . [w[*2]]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person" (Penal Law § 120.05 [1]). Finally, "[a] person is guilty of menacing in the second degree when . . . [h]e or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol" (Penal Law § 120.14 [1]).
At trial, the victim testified that the day of the incident, she went to her grandson's birthday party and, upon return from the party, defendant was sending her upsetting text messages, so when he came into the bedroom she did not speak to him. While in bed, defendant began pulling her to turn toward him and she was fighting by trying to pull back, so defendant grabbed her breast and squeezed, leaving marks. She testified that defendant then put his tongue in her ear and explained that she had previously told defendant that her ex-husband used to do this and that she didn't like it. So, knowing defendant wouldn't like it, she then called him by her ex-husband's name, which caused defendant to push her out of bed. From there a physical altercation ensued which, as the victim explained, resulted in her having various marks and bruises all over her body, as well as a broken nose. Photographs of the victim's injuries were admitted into evidence. As a result of defendant punching the victim in her face and breaking her nose, there was blood all over the floor where the altercation occurred. The victim also explained that defendant whipped her with a phone cord and "karate chopped" her in her throat so hard that she could not breathe. The victim testified that, in an attempt to defend herself, she threw a wooden moose at defendant. The victim explained that while she was leaning over the couch choking up blood, defendant pointed the victim's pistol, which she knew to be loaded, at her. The pistol had been in defendant's gun safe, where she observed him put it the night before. The victim testified that every time she tried to get her phone or purse to leave, defendant would throw it. At some point, when defendant had gone out the back door, the victim was able to get her phone and purse and attempted to call 911. Defendant, however, grabbed and threw her phone. When emergency assistance called her back, the victim stated that she had been held at gun point and was not able to leave. While on the phone with emergency assistance, she was able to get into her car and drive away.
A lieutenant with the Chemung County Sheriff's office, who responded to the victim's 911 call, also testified. He observed significant injuries on the victim's face, including that her nose was bleeding, swollen and appeared to be broken and her left eye was black. He observed a large welt on her chest that appeared to be from a wire with a small diameter. The lieutenant then spoke with defendant, who told him that he had an [*3]argument with the victim who became upset after he gave her a "wet willy." Defendant told the lieutenant that, after defendant "tossed" the victim's cellphone charger to her, the victim hit him with a wooden moose. After this, defendant pushed the victim away and "she may have hit the wall," which caused her injuries. Upon arrest, defendant stated that he did not know where the pistol was and that the victim may have taken it with her. Ultimately, the pistol was found in the backyard of the residence and the magazine was found on the back patio with bullets inside.[FN2]
Jeffrey King, an ear, nose and throat surgeon, testified as an expert in otolaryngology for the People that he saw the victim as a patient four times after the incident between 2021 and 2023. King testified that the first day he saw the victim, which was seven days after the incident, the victim had obvious ecchymosis — extravagated blood which often follows from trauma to the face — underneath both of her eyes that is classic for a fracture of the nose, her nose appeared to have some deviation and she had "several obvious bruises on her arms that [were] visible." King conducted a laryngoscopy wherein the victim's vocal cords demonstrated fresh blood, which is an unusual finding and is medically suspicious for post trauma and was consistent with complaints that she could barely breathe and talk after being "punched" in the neck. He testified that the victim denied any prior "nasal obstructions, sinus, other issues" and "her breathing was fine before" the incident. King testified that, even after the months it took for the swelling to go down, she "still absolutely cannot breathe well. [Her septum] is severely deviated" and that the likelihood of a severely deviated septum, such as the victim's, resolving without surgery is "[e]ssentially near zero" because it had been over a year and was completely obstructed on one side.
For his part, defendant testified that he had been upset that, on the day of the incident, the victim went to see her deceased husband's grandchild rather than stay home with defendant to help him put up sheetrock in defendant's home. He admitted to exchanging text messages with the victim, but denied that they were "heated." Defendant explained that when he came to bed he tried to make the victim laugh and he "took [his] finger and [he] stuck it in [her] ear" and that "[i]t was not the right thing to do." Defendant testified that he slid and fell off the bed and that when the victim came at him, all that he could think to do was throw his arms up in the air and he happened to be holding a phone cord, which hit her. After this, defendant stated that he and the victim were screaming at each other and that they ended up in front of a love seat and he pushed her. This caused her to go over the arm of the love seat and hit the wall. The victim then hit defendant with a moose statue. He clarified that he did not see the victim hit him with the moose, but that he was "knocked [*4]out" and when he came to, his eyes were covered in blood and it was later determined that it had been the moose statue. According to defendant, the victim said that "[m]aybe [she] should kill [them] both" and he was afraid she was going to shoot him with her pistol. Defendant then got the pistol out of the gun safe, went to an outside door of the property, removed the clip and dropped it on the ground and then threw the pistol as hard as he could into a field.[FN3] When asked if that was the only time defendant had touched the pistol he responded, "I never touched the pistol." He denied knowing how to shoot a pistol. After throwing the pistol, defendant testified that the victim bandaged his face. Defendant denied pushing the victim into the wall more than the one time he pushed her to protect himself. He explained that he did not mean to push her into the wall, but that she lost her balance and hit the wall. He denied intentionally hitting the victim with the phone cord or karate chopping her throat.
As to defendant's preserved legal sufficiency challenges,[FN4] viewing the evidence in the light most favorable to the People, there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion" that the victim suffered a serious physical injury and that defendant's possession of the pistol was not temporary and lawful (People v Gilmore, 200 AD3d 1184, 1188-1189 [3d Dept 2021] [internal quotation marks, brackets and citations omitted], lv denied 38 NY3d 926, 927 [2022]). Turning first to serious physical injury, the evidence demonstrates that the victim suffered a protracted impairment of her nose because her injuries included several bruises, bleeding and swelling as well as a displaced fracture to her septum that requires surgery to heal properly (see Penal Law §§ 10.00 [10]; 120.05 [1]; People v Stetin, 167 AD3d 1245, 1247 [3d Dept 2018], lv denied 32 NY3d 1178 [2019]). Moreover, her breathing issues due to this injury still persisted more than a year after the incident (see People v Flanigan, 242 AD3d 1374, 1376 [3d Dept 2025]). Additionally, the evidence also established that defendant's possession was not temporary and lawful because the testimony demonstrated that the pistol had been in his residence for a period of time and he unlawfully used it in anticipation of confrontation with the victim and in a dangerous manner (see People v Williams, 36 NY3d 156, 162-163 [2020]; see generally People v Calafell, 211 AD3d 1114, 1118 [3d Dept 2022], lv denied 39 NY3d 1077 [2023]; People v Mack, 177 AD3d 1155, 1156 [3d Dept 2019]). Finally, given the victim's testimony that she saw defendant pointing the pistol at her face when she was in the living room and that this same pistol was recovered from defendant's residence, the verdict as to the charge of menacing in the second degree was also based upon legally sufficient evidence (see Penal Law § 120.14 [1]; People v Gaylord, 224 AD3d 1169, 1172 [3d Dept 2024], lv [*5]denied 42 NY3d 926 [2024]).[FN5]
Turning to the weight of the evidence, although a different verdict would not have been unreasonable had the court credited defendant's version of events, the court could reasonably choose to believe the victim's version of events (see People v Gilmore, 200 AD3d at 1189). To that end, the evidence presented at trial supports County Court's determination that defendant unlawfully possessed the pistol in a dangerous manner and used it with the intent to harm the victim. Specifically, defendant allowed the pistol in his residence even though he has a predicate conviction, placed it in his safe and pointed it at the victim's face during the incident (compare People v Ramirez, 224 AD3d 102, 107-108 [1st Dept 2024], lv denied 42 NY3d 1081 [2025]). Similarly, the evidence established that defendant intended to cause the victim serious bodily harm given that the victim sustained injuries that resulted in bleeding, swelling, substantial pain and a comminuted displaced fracture to her septum with symptoms persisting for over a year (see People v Fisher, 221 AD3d 1355, 13589-1359 [3d Dept 2023], lv denied 40 NY3d 1092 [2024]; People v Gill, 168 AD3d at 1142). Relevant to the menacing conviction, under all the circumstances, the evidence established that the room was light enough for the victim to see defendant holding a pistol to her face — which made her fear for her life — and which was further corroborated by defendant's testimony that he was able to see the love seat located in the same room (see People v Crowley, 234 AD3d 1125, 1128 [3d Dept 2025]; People v Imes, 226 AD3d 1080, 1082 [3d Dept 2024], lv denied 41 NY3d 1019 [2024]).Therefore, "[u]pon viewing the evidence in a neutral light and deferring to [County Court's] credibility assessments, we conclude that the verdict is not against the weight of the evidence" (People v Fisher, 221 AD3d at 1359; see People v Wilder, 200 AD3d 1303, 1306 [3d Dept 2021]).
Finally, we are unpersuaded by defendant's assertion that his sentence was harsh and excessive, especially given his prior criminal history and the violent nature of the incident (see People v Akins, 240 AD3d 1003, 1007 [3d Dept 2025]; People v Lewis, 224 AD3d 1143, 1155 [3d Dept 2024], lv denied 42 NY3d 939 [2024]). Accordingly, "[h]aving considered the totality of circumstances presented in this case, we decline defendant's request" to reduce the sentence in the interest of justice (People v Alvarez, 238 AD3d 1266, 1270 [3d Dept 2025], lv denied 44 NY3d 981 [2025]; see People v Dorvil, 234 AD3d 1106 [3d Dept 2025], lv denied 44 NY3d 982 [2025]).
Garry, P.J., Clark, Powers and Corcoran, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: The People moved, at the commencement of trial, to dismiss the count charging defendant with criminal mischief in the fourth degree as a matter of prosecutorial discretion.

Footnote 2: The parties stipulated that defendant's blood was on the pistol.

Footnote 3: Defendant also testified that the victim brought the pistol over to his house and she put it in his gun safe and that he had only handled the pistol this one time.
Footnote 4: Defendant did not include all of the arguments he now raises on appeal in his trial order of dismissal and, thus, they are not preserved (see People v Gill, 168 AD3d 1140, 1140 [3d Dept 2019]). Specifically, he did not raise his current claim of self-defense or that there was insufficient proof as to his intent to harm the victim.

Footnote 5: The parties stipulated that defendant had a prior conviction for endangering the welfare of a child.