People v Everett
2026 NY Slip Op 03701
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

The People of the State of New York, Respondent,
v
Jeffrey Everett, Appellant.

Decided and Entered:June 11, 2026
CR-23-2325
Calendar Date: April 21, 2026
Before: Garry, P.J., Ceresia, Powers And Mackey, JJ.

Steven Sharp Law, PLLC, Albany (Steven M. Sharp of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

[*1]
Ceresia, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered November 3, 2023 in Albany County, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the second degree, assault in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree.
On December 19, 2021, a pregnant woman (hereinafter victim A) and her friend (hereinafter victim B) were viciously beaten on the street in the City of Albany by defendant, the father of victim A's unborn child, who also smashed their car window with a gun. At some point, the gun went off, resulting in victim B being shot in the leg. On January 24, 2022, victim A called the police to report that defendant was stalking her and she was afraid for her life. The police responded to victim A's location. When officers approached defendant, he fled and was arrested after a brief chase. The police recovered a bag of cocaine in defendant's pocket and two more bags on the ground. Upon searching his vehicle, they found a handgun.
Defendant was thereafter indicted in connection with both incidents. With regard to the December incident, he was charged with attempted murder in the second degree, criminal possession of a weapon in the second degree and assault in the third degree.FN1 As for the January incident, he was charged with criminal possession of a weapon in the second degree and criminal possession of a controlled substance in the third and fourth degrees. Following a jury trial, defendant was acquitted of the December attempted murder charge and the January weapon possession charge, but convicted of the remaining counts. Supreme Court sentenced him to an aggregate term of 25 years in prison, to be followed by five years of postrelease supervision. Defendant appeals.
Initially, it is defendant's position that the trial evidence is legally insufficient, and the convictions are against the weight of the evidence, in multiple respects. Defendant did not preserve his current legal sufficiency challenges by way of specific arguments in his motion to dismiss the indictment at the close of the People's proof, but "a weight of the evidence challenge, which bears no preservation requirement, also requires consideration of the adequacy of the evidence as to each element of the crimes" (People v Doane, 212 AD3d 875, 876 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1154 [2023]). When conducting a weight of the evidence review, "we view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Torres, 247 AD3d 1270, 1271 [3d Dept 2026] [internal quotation marks [*2]and citations omitted]).
Defendant claims that the trial evidence failed to establish his identity as the assailant in the December incident because no witness identified him as such in court. We are unpersuaded. It is true that neither victim A nor victim B testified at trial, but the People did introduce victim A's grand jury testimony during their case-in-chief. Victim A testified before the grand jury that the assailant in the December incident was her unborn child's father, whom she knew only by the nickname "Swerve." According to victim A's grand jury testimony, following the attack, she identified Swerve in a photo array, and the police then told her that the person she identified was Jeffrey Everett. Other evidence presented at trial revealed that, on the night of the January incident, after victim A had learned defendant's actual name, she called the police and reported that she was fearful of being killed by Jeffrey Everett, who had been stalking her and had followed her to a retail store where she was then hiding. By this point, the police already believed that defendant was the perpetrator of the December incident, and they had been planning to arrest him. From their investigation, they were aware that he had worn a black ski mask during the December incident. When they received the call from victim A, multiple police officers immediately responded to her location, and chased and apprehended defendant. During a search of a nearby vehicle known to be driven by defendant, the police found defendant's identification along with a black ski mask. Police witnesses identified defendant in court as the person they arrested in the January incident.
Taken together, this evidence, along with the reasonable inferences that can be drawn therefrom, is sufficient to establish defendant's identity (see People v Noble, 244 AD3d 1499, 1505 [3d Dept 2025]; People v Cipriani, 244 AD3d 1304, 1310 [3d Dept 2025], lv denied 44 NY3d 1065 [2026]). That is, victim A knew that the December assailant was her child's father, and although she was initially only aware of his nickname, upon identifying him in a photo array, she learned that his actual name is Jeffrey Everett. The following month, she told the police that it was Jeffrey Everett who was stalking her, leading the police to respond to her location and ultimately arrest Jeffrey Everett, whose vehicle was found to contain a ski mask resembling that worn by the December assailant and who was identified in court. Accordingly, we conclude that the weight of the evidence supported defendant's identity as the December perpetrator.
Defendant also contends that the People failed to prove that the gun he was convicted of possessing in connection with the December incident was operable, which is a necessary element of the crime of criminal possession of a weapon in the second degree (see Penal Law § 265.03 [3]; People v Longshore, 86 NY2d 851, 852 [1995]). In support of this claim, defendant points to the evidence [*3]reflecting that victim A never heard a gunshot and victim B believed that the wound on her leg was caused by broken glass, as well as the fact that neither the gun in question nor any shell casings were recovered. Notwithstanding this proof, there was additional evidence indicating that the gun was operable because it actually fired a shot (see People v Gillespie, 205 AD3d 1212, 1214 [3d Dept 2022], lv denied 39 NY3d 1072 [2023]; People v Solomon, 78 AD3d 1426, 1428-1429 [3d Dept 2010], lv denied 16 NY3d 899 [2011]). An emergency physician who treated victim B testified that her leg wound photographs of which were admitted into evidence was consistent with a gunshot due to its circular shape and raised edges, and she had bullet fragments lodged in her leg. Therefore, viewing the evidence in a neutral light and deferring to the jury's credibility assessments, the operability of the gun is supported by the weight of the evidence.
Further, defendant argues that, with respect to the January incident, his intent to sell cocaine was not proven, such that the charge of criminal possession of a controlled substance in the third degree cannot stand (see Penal Law § 220.16 [1]). However, the evidence revealed that after the police chased and apprehended him, one bag of cocaine was recovered from his pocket and two other bags were found on the ground, one of which contained 62 smaller tie-off bags. In addition, the police found two digital scales when they searched the vehicle used by defendant. This proof satisfactorily established the requisite intent to sell (see People v Daniels, 247 AD3d 1257, 1260 [3d Dept 2026]; People v Smith, 237 AD3d 1367, 1373-1374 [3d Dept 2025], lv denied 43 NY3d 1059 [2025]).FN2
Moving on, defendant asserts that Supreme Court erred in denying his motion to dismiss the indictment on speedy trial grounds. More specifically, defendant contends that the People were not ready for trial within the statutorily required six-month period because, although they had filed their initial certificate of compliance with their discovery obligations within that period, it was illusory. The reason for that, according to defendant, was because the People had not exercised due diligence by failing to have submitted the cocaine for lab testing by that time, and instead waited over a year to do so. This argument is without merit. In fulfilling their discovery obligations, the People are not required to generate and turn over discoverable material that does not yet exist (see People v Oliver, 247 AD3d 1485, 1486 [4th Dept 2026]; People v McCarty, 221 AD3d 1360, 1362 [3d Dept 2023], lv denied 40 NY3d 1093 [2024]; People v Fisher, 71 Misc 3d 1051, 1053 [Sup Ct, Bronx County 2021]). To that end, we note that the People are not obligated to disclose the results of scientific tests "unless and until" such tests have been completed (CPL 245.20 [1] [j]; see People v Fisher, 71 Misc 3d at 1053-1054). Since the People did not neglect to turn over any discoverable [*4]material then in existence when they filed their initial certificate of compliance,FN3 it was not illusory and dismissal was not warranted.
Next, defendant claims that Supreme Court improperly denied his motion to sever the counts relating to the December incident from those pertaining to the January incident. We disagree. Charges are joinable in a single indictment, even if based upon different criminal transactions, where proof of one transaction would be material and admissible as evidence-in-chief upon a trial of the other (see CPL 200.20 [2] [b]; People v Bridges, 220 AD3d 1107, 1112 [3d Dept 2023], lv denied 40 NY3d 1091 [2024]). This may include situations where proof relative to one of the transactions tends to provide necessary background information and complete the narrative in connection with the other transaction (see People v Stewart, 241 AD3d 1179, 1180 [1st Dept 2025], lv denied 45 NY3d 939 [2026]). When offenses are joinable on this ground, the trial court has no authority to order severance (see People v Bongarzone, 69 NY2d 892, 895 [1987]; People v Jesmer, 229 AD3d 1112, 1114 [4th Dept 2024], lv denied 42 NY3d 971 [2024]). Here, evidence of the December incident not only provided necessary background and context as to the nature of the relationship between victim A and defendant, but also supplied the basis for the police response and arrest of defendant in January (see People v Cox, 161 AD3d 500, 501 [1st Dept 2018], lv denied 31 NY3d 1146 [2018]; People v Rogers, 94 AD3d 1246, 1248 [3d Dept 2012], lv denied 19 NY3d 977 [2012]).
Defendant asserts that Supreme Court erred by allowing the People to introduce victim A's grand jury testimony during their case-in-chief in lieu of her live testimony. "[A]n unavailable witness's grand jury testimony, which by definition has not been subjected to confrontation, generally may not be admitted at trial on the People's direct case" (People v Rankin, 127 AD3d 1335, 1337 [3d Dept 2015] [internal quotation marks and citations omitted], lv denied 26 NY3d 1149 [2016]; see People v Dubarry, 25 NY3d 161, 174 [2015]). However, "[a] witness's out-of-court statements may be admitted as part of the People's direct case where the People demonstrate by clear and convincing evidence that the defendant, by violence, threats or chicanery, caused the witness's unavailability" (People v Nelson, 156 AD3d 1112, 1116 [3d Dept 2017] [internal quotation marks, brackets and citation omitted], lv denied 31 NY3d 1151 [2018]; see People v Bryant, 200 AD3d 1483, 1490-1491 [3d Dept 2021], appeal dismissed 38 NY3d 1158 [2022]). Such tactics may include a defendant taking advantage of a close relationship with the witness to pressure him or her not to testify (see People v Roby, 217 AD3d 505, 506 [1st Dept 2023], lv denied 40 NY3d 952 [2023]; People v Nelson, 156 AD3d at 1117-1118; see e.g. People v Boyd, 234 AD3d 1331, 1332 [4th Dept 2025], lv denied 43 NY3d 1044 [2025]).
At the Sirois hearing, the People introduced recordings [*5]of telephone calls between defendant, who was then incarcerated, and victim A. In the calls, defendant told victim A to "plead the Fifth" and to advise prosecutors that she was refusing to testify, despite victim A's protestations that he was asking her to do "crazy ass shit," that there would be a warrant for her arrest and that "they" would "pop up at [her] door the same day [she doesn't] show up." Defendant grew frustrated and raised his voice, saying that she was going to have to explain things to their daughter, and that she was only facing a warrant while he was confronted with "going to jail for life." He repeatedly criticized her for trying to handle the situation "[her] own way," while he was trying to "coach this" and tell her what she needed to do. In multiple calls, he said that he was going to send his brother to get a message to her, and he yelled that she did not have to "pull up" while she insisted that she did. Defendant told victim A that "all [he was] asking" her to do was to find something to do "around that time" and that she should go to a particular friend's house "for a couple days." Defendant also pressured victim A to inform the prosecutor that the events in question never happened, telling her, "you are their only hope." In addition to submitting the recorded calls, the People called a senior investigator in their office who testified that victim A had initially been cooperative but, as the trial approached, she could no longer be located. The investigator traveled to the home of victim A's friend, who called victim A and then gave the investigator the phone. Victim A told the investigator that she was out of the area and was not coming to court, despite the fact that she was by this point the subject of a material witness warrant.
Viewing this chain of events as a whole, it is apparent that defendant used his relationship with victim A, the mother of his child, to pressure her not to testify. Defendant repeatedly coached victim A on various methods she could use to avoid testifying, from invoking her right to remain silent to denying the events in question had occurred to disappearing altogether. Defendant also issued what could be construed as veiled threats to send his brother to deliver a message to her on his behalf. It is noteworthy that, while victim A was at first cooperative with the police, and was initially insistent upon testifying in her calls with defendant, her eventual refusal to testify did not occur until after these conversations with him (see People v Roby, 217 AD3d at 506). Thus, we are satisfied that the People established by clear and convincing evidence that defendant "engaged in misconduct aimed at least in part at preventing the witness from testifying and that those misdeeds were a significant cause of the witness's decision not to testify" (People v Smart, 23 NY3d 213, 220 [2014]; see People v Kellum, 233 AD3d 1374, 1378 [3d Dept 2024], lv denied 44 NY3d 983 [2025]).
Defendant additionally argues [*6]that the People improperly introduced evidence at trial that three bags of cocaine had been recovered during the January incident, whereas police testimony at the pretrial suppression hearing only made reference to one bag. By failing to object to the trial evidence or seek to reopen the suppression hearing, defendant did not preserve this claim for our review (see People v McKoy, 217 AD3d 1396, 1397 [4th Dept 2023], lv denied 40 NY3d 998 [2023]), and we reject his related contention that trial counsel was ineffective for failing to lodge such an objection. The facts that emerged at both the suppression hearing and the trial revealed that the cocaine seized by the police was properly admissible as having been abandoned by defendant or discovered as the product of a search incident to a lawful arrest. Therefore, counsel will not be faulted for neglecting to raise an argument that had little or no chance of success (see People v Prusinski, 242 AD3d 1427, 1432 [3d Dept 2025], lv denied 45 NY3d 938 [2026]; People v Ambrosio, 235 AD3d 1181, 1186 [3d Dept 2025], affirmed ___ NY3d ___, 2026 NY Slip Op 00824 [2026]).
Contrary to defendant's further argument, Supreme Court did not err in permitting introduction of statements made by the victims in a 911 call and body camera footage of the police response. The statements were properly admitted under the excited utterance exception to the hearsay rule, as they were clearly made "under the stress and excitement of a startling event and [were] not the product of any reflection and possible fabrication" (People v Gilmore, 200 AD3d 1184, 1190 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 38 NY3d 927 [2022]).
Finally, we are unpersuaded by defendant's claims relating to his sentence. His argument that Supreme Court imposed a lengthy sentence as punishment for electing to proceed to trial is both unpreserved (see People v Brisman, 236 AD3d 1092, 1094 [3d Dept 2025]) and lacking in merit (see People v Henehan, 238 AD3d 1336, 1340 [3d Dept 2025], lv denied 43 NY3d 1055 [2025]). In that regard, while defendant was offered a 12-year prison term before trial in exchange for a plea to the attempted murder charge, "the mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations does not, without more, establish retaliation or vindictiveness" (People v Brisman, 236 AD3d at 1094 [internal quotation marks and citations omitted]), and here there is no evidence that the sentence was retaliatory rather than based upon relevant sentencing factors. Contrary to defendant's further assertion, we do not find the sentence imposed to be unduly harsh or severe, in light of his prior criminal history, the seriousness of his conduct and his failure to accept responsibility or express remorse (see People v Gerhard, 244 AD3d 1313, 1319 [3d Dept 2025], lv denied 45 NY3d 936 [2026]; People v Bridges, 220 AD3d 1107, 1113 [3d Dept 2023], lv denied 40 NY3d 1091 [*7][2024]). Defendant's remaining contentions have been considered and determined to be without merit.
Garry, P.J., Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1
Defendant was also charged with a second count of criminal possession of a weapon in the second degree, but this count was dismissed prior to trial.

Footnote 2
We reject defendant's claim that the contents of the bag containing 62 smaller tie-off bags cannot be considered as evidence of his intent to sell because those 62 smaller bags were not lab tested. An officer did conduct a field test of one of the 62 smaller bags, which yielded a positive result for cocaine. Also, the substances in the bag found in defendant's pocket and the other bag on the ground were lab tested and determined to be cocaine. Under these circumstances, the jury could reasonably infer that the 62 smaller bags contained cocaine (see People v Daniels, 247 AD3d at 1260) and, thus, are properly considered when weighing whether he possessed the requisite intent.

Footnote 3
We note that the People did furnish defendant with the lab results promptly upon receiving them and thereafter filed supplemental certificates of compliance, the validity of which defendant does not challenge.