◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM C. SHRUBSALL, Appellant.—Judgment modified as a matter of discretion in the interest of justice and as modified affirmed, in accordance with the following memorandum: Defendant, aged 17, entered a plea of guilty to a charge of manslaughter in the first degree, in full satisfaction of an indictment charging, inter alia, murder in the second degree, on the ground that he was acting under extreme emotional disturbance.

According to statements of defendant, his mother had psychologically and physically abused him for the past three years since the death of his father, culminating in the tragic events of June 25, 1988, when he bludgeoned her to death with a baseball bat. The victim had gone into a rage because defendant had arrived home late from a visit to his girlfriend's home. She had screamed at defendant for two hours, following him about the house. At about 3:00 A.M., the victim threatened to call defendant's girlfriend's parents to tell them that their daughter was a slut. She picked up the phone and when defendant tried to stop her she began to hit him, knocked him to the floor twice, and threatened to kill him. The victim, who weighed approximately 300 pounds, backed defendant down the hallway toward his room, with arms outstretched as if to choke him, repeating that she was going to kill him. Defendant picked up a baseball bat and hit her with it. She kept coming at him. He struck her five times before she went down, but then he continued to hit her repeatedly with the bat.

Defendant's request to be adjudicated a youthful offender was denied and defendant was sentenced to serve an indeterminate term of 5 to 15 years. On appeal, defendant requests this court to adjudicate him a youthful offender as a matter of discretion in the interest of justice.

"The youthful offender provisions of the Criminal Procedure

Law emanate from a legislative desire not to stigmatize youth between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" *(People v Drayton,* 39 NY2d 580, 584, *rearg denied* 39 NY2d 1058; *see also,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 720.10, at 217). "The determination of whether to grant or deny youthful offender status rests within the sound discretion of the court and depends upon all the attending facts and circumstances of the case" *(People v Ortega,* 114 AD2d 912, *lv denied* 67 NY2d 887). However, the Appellate Division may exercise its interest of justice jurisdiction to adjudicate a defendant a youthful offender even if it does not conclude that the trial court abused its discretion in denying youthful offender treatment *(see, People v Cruickshank,* 105 AD2d 325, 335, *affd sub nom. People v Dawn Maria C.,* 67 NY2d 625).

The factors to be considered upon an application for youthful offender treatment include "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" *(People v Cruickshank, supra,* at 334).

Applying these factors to the instant case, there is no question that defendant stands convicted of a serious crime of a brutal nature. However, this factor alone does not mandate denial of youthful offender treatment *(People v Cruickshank, supra,* at 335). Defendant has no prior criminal record, nor does the record reveal any significant prior acts of violence on his part. Defendant had an excellent reputation in the community, having been first in his high school class academically, as well as editor of the yearbook and a member of chorus, drama club, math league, and student government. Defendant's high school principal wrote to the sentencing court suggesting that, if given youthful offender status, defendant would be a law-abiding member of society. Defendant was accepted at several prestigious colleges and universities. Prospects for defendant's rehabilitation are good. It is also significant that the People did not oppose defendant's request for youthful offender treatment, having agreed to stand mute at sentencing as a condition of the plea *(see, People v Maryalice T. M.,* 97 AD2d 829; *People v Richard H.,* 65 AD2d 775).

The Probation Department, although recommending that defendant be incarcerated, did not oppose youthful offender status.

We find that significant mitigating circumstances exist in that defendant presented evidence to the sentencing court that he was an abused child and that the act he committed arose out of that fact. Dr. Charles Ewing, a psychologist, testified at the Grand Jury and reported to the sentencing court his opinion that defendant had been abused, both psychologically and physically, by the victim. We consider it to be particularly significant that defendant's aunt, the victim's sister, wrote to the sentencing court on defendant's behalf. Having observed the dynamics within this family for years, she opined that "the abuses of years culminated in the terrible act that Billy committed: that he just exploded with rage." Moreover, the sentencing court acknowledged that defendant's act was not premeditated (see, People v Davis, 81 AD2d 510, 511; cf., People v O'Neill, 86 AD2d 213, 215).

In summary, weighing all the appropriate factors, we choose to exercise our discretion to vacate the sentence, adjudicate defendant a youthful offender, and sentence him to serve an indeterminate term of 1⅓ to 4 years (see, Penal Law § 60.02 [2]; People v Smith, 134 AD2d 938).

All concur, except Dillon, P. J., who dissents and votes to affirm, in the following memorandum:

Dillon, P. J. (dissenting). I respectfully dissent. As the majority correctly acknowledges, defendant bludgeoned his mother to death with a baseball bat and was indicted for murder in the second degree. The People recommended that defendant be permitted to enter a plea of guilty to the lesser included offense of manslaughter in the first degree, and the court accepted that recommendation. Upon entering his plea of guilty, defendant admitted that he intended to cause his mother's death. He entered the plea with full knowledge that a maximum sentence of imprisonment for 8⅓ to 25 years could be imposed. Nevertheless, County Court imposed a sentence that was less than the statutory maximum. Many, if not all, of the "significant mitigating circumstances" relied upon by the majority were fully taken into account not only when defendant was afforded the opportunity to plead guilty to the lesser included offense but also when the court sentenced defendant to a term of imprisonment significantly less than the allowable maximum.

The majority today substitutes its discretion for that exer-

cised by County Court when it refused to grant defendant the additional benefit of youthful offender treatment *(see, People v Locke,* 119 AD2d 834). In doing so, the majority accepts as true defendant's argument that Mrs. Shrubsall's death was essentially the consequence of her own actions. Unlike *People v Cruickshank* (105 AD2d 325, *affd sub nom. People v Dawn Maria C.,* 67 NY2d 625), upon which the majority strongly relies, here neither defendant's statements nor those offered by others on his behalf have been tested by cross-examination and an assessment of credibility by a trier of fact. Instead, they are accepted and relied upon at face value. Moreover, that reliance is somewhat selectively applied to but a portion of the evidence that was before the sentencing court. For example, the majority ignores those portions of the Grand Jury testimony indicating that defendant and his mother enjoyed a harmonious and loving relationship, that defendant has a volatile and sometimes violent temper and that, when initially questioned about his mother's death, he showed no remorse and told authorities that his mother had been killed by two intruders.

In sum, I find no justification in the record for this court's substitution of its discretion for that exercised by County Court. Accordingly, I would affirm the judgment of County Court. (Appeal from judgment of Niagara County Court, Hannigan, J.—manslaughter, first degree.) Present—Dillon, P. J., Doerr, Pine, Lawton and Davis, JJ.