■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH STRONG, Appellant. [60 NYS3d 536]—

Egan Jr., J. Appeal from a judgment of the County Court of Sullivan County (McGuire, J.), rendered February 18, 2015, convicting defendant upon his plea of guilty of the crime of burglary in the second degree (seven counts).

In satisfaction of a multicount indictment, defendant pleaded guilty to burglary in the second degree (seven counts), waived his right to appeal and thereafter was sentenced to an aggregate prison term of eight years, to be followed by five years of postrelease supervision. Upon appeal, we determined that, despite defendant's valid appeal waiver, to the extent that he had not been adequately apprised that the payment of restitution was part of his plea bargain, County Court erred in imposing sentence without first offering him an opportunity to withdraw his plea (124 AD3d 992, 992-993 [2015]). We also found that County Court had failed to make the requisite youthful offender determination (*id.* at 993). Accordingly, we vacated defendant's sentence and remitted the matter for further proceedings (*id.*). Upon remittal, County Court vacated its prior order imposing restitution, denied defendant youthful offender status and, once again, sentenced defendant, in accordance with his negotiated plea, to an aggregate prison term of eight years, to be followed by five years of postrelease supervision. Defendant now appeals.

We affirm. Defendant contends that County Court abused its discretion in denying him youthful offender status and that the sentence imposed was harsh and excessive. "[T]he decision to grant or deny youthful offender status rests within the sound exercise of the sentencing court's discretion and, absent a clear abuse of that discretion, its decision will not be disturbed" (*People v Dorfeuille*, 127 AD3d 1414, 1415 [2015] [internal quotation marks and citation omitted], *lv denied* 26 NY3d 928 [2015]; *accord People v Clark*, 84 AD3d 1647, 1647 [2011]). Upon our review of the record, we are unpersuaded that County Court abused its discretion in denying defendant's application for youthful offender status (*see* CPL 720.20 [1]). In making its determination, County Court considered numerous mitigating circumstances, including, among other things, defendant's youth, his lack of a criminal record or prior acts of violence, his cooperation with authorities, his familial history and his expressed remorse for his conduct (*see People v Peterson*, 127 AD3d 1333, 1334 [2015], *lv denied* 25 NY3d 1206 [2015]; *People v Cruickshank*, 105 AD2d 325, 334-335 [1985], *affd sub nom. People v Dawn Maria C.*, 67 NY2d 625 [1986]). Nevertheless, based upon the seriousness of the charges for which defendant was convicted and the fact that he willingly participated in seven separate and distinct residential burglaries over a two-week period, we perceive no abuse of discretion in County Court's ultimate decision to deny defendant youthful offender status (*see People v Green*, 128 AD3d 1282, 1283 [2015]; *People v Dorfeuille*, 127 AD3d at 1415). Nor do we find any extraordinary circumstances or an abuse of discretion that would warrant a reduction of his sentence (*see People v Tarver*, 149 AD3d 1350, 1350 [2017]; *People v Butler*, 111 AD3d 1024, 1025 [2013], *lv denied* 23 NY3d 961 [2014]). Defendant's remaining claims are without merit.

McCarthy, J.P., Devine and Clark, JJ., concur.

Garry, J. (dissenting). I respectfully dissent. Other than retribution, there are three established purposes of sentencing: rehabilitation, deterrence, and the protection of society by isolating the offender (*see People v Martinez*, 26 NY3d 196, 202 [2015, Pigott, J., dissenting]; *People v Broadie*, 37 NY2d 100, 112 [1975], *cert denied* 423 US 950 [1975]; *People v Raucci*, 136 AD2d 48, 49 [1988]). The paramount and overarching concern is the result upon society; that is, in what manner a particular sentence imposed upon an individual comports with the advancement of our societal goals. Here, I cannot find a societal benefit arising from the sentence imposed. Therefore, considering the gravity of the matter, and despite my recognition of our customary deference to the sentencing court, I must dissent.

The underlying circumstances presented here are more tragic and compelling in nature than the tragedies of poor choices and criminality that we so often, too often, see with young defendants; in the initial sentencing proceeding, County Court described defendant's circumstances as among "the saddest [the court had] ever heard of." At the time of these crimes, defendant was 18 years old and had been living alone, without adult support, guidance or supervision, for two years. His mother left his family when he was three years old. He and his brother were thereafter raised by their father. His father died when defendant was 16. By all accounts, before his father's death, defendant was on sound footing. He was a very capable student. He attended school regularly and got good grades; he had been accepted into a well-regarded college. He played tennis and was employed during vacations and after school in a local children's summer camp and at a grocery store. He also worked—apparently as an intern or volunteer—in adult care facilities and a hospital, in preparation for a future career in health care. He was well respected by teachers and peers. He had no record of any school discipline issues, much less any issues involving criminal conduct of any nature.

After being orphaned, however, no adult relative or friend stepped forward to fill the resulting vacuum of parental guidance and support. There is no suggestion in the limited record that he was provided with any grief counseling services or other such support during the aftermath of this loss, to assist in coping with his bereavement. What the record does reveal is that thereafter he lived without any form of adult supervision or assistance in a house that he and his brother purchased with their father's life insurance benefits. It is evident—for reasons again unexplained and undeveloped in the record—that he had a poor relationship with his brother. In the absence of any supportive family contacts, his life apparently spiraled out of control, and there was no one present to check his descent. He dropped out of school without graduating and began to abuse drugs and alcohol. In the midst of all of this, he also came to realize that he was gay. At some point before these crimes were committed, he became involved with his codefendants, who, as described by County Court, "targeted" defendant because of his sexual orientation, moved into his house and took advantage of him in a manner that, during the first sentencing, the court described as "to a certain extent victimiz[ation]."

Significantly, without in any manner minimizing the severity of defendant's crimes and particularly the impact of these

crimes upon the victims, it must be clearly noted that they occurred in a limited, two-week period of time. This crime spree occurred in the midst of what can only be understood as a major life crisis, in light of defendant's history and upon review of the surrounding circumstances. Entirely lacking is any suggestion of callous behavior on defendant's part, or evil intent. Instead, the circumstances of this two-week period strongly suggest a brief and terrible downward spiral, with terrible consequences. Following his arrest, defendant was fully cooperative with police and gave a confession that may have aided in implicating his codefendants. Further, although defendant was not the ringleader, and his participation was limited to driving while his codefendants actually committed the burglaries, he took full responsibility for his role and acknowledged that the crimes might never have happened if he had not facilitated them by providing transportation. His remorse was immediate and apparently genuine.

The factors to be taken into account in determining whether to grant youthful offender status include "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (*People v Cruickshank*, 105 AD2d 325, 334 [1985], *affd sub nom. People v Dawn Maria C.*, 67 NY2d 625 [1986]; *accord People v Ferguson*, 285 AD2d 901, 901-902 [2001], *lv denied* 96 NY2d 939 [2001]). Virtually all of these factors favor granting youthful offender status to defendant—his tragic background, the complete lack of any prior violent or criminal acts whatsoever, and, in particular, the clear reasons for hope, based upon his blameless, successful life before the loss of his father and his remorse thereafter—that defendant has the potential to rehabilitate himself, complete his education and build a more constructive life in the future. The significant exception is the gravity of the crimes and their very serious impact upon the victims. Nevertheless, by making youthful offender status available even to young defendants who commit such serious crimes as first degree manslaughter, the Legislature manifested its intent "that this factor alone does not mandate denial of such treatment" (*People v Cruickshank*, 105 AD2d at 335).

Considering all of the circumstances, the sentencing goals of rehabilitation, deterrence and the protection of society would be fully met by sentencing defendant to a shorter period of

incarceration consistent with youthful offender status (*see People v Cannell*, 178 AD2d 853, 855-856 [1991], *lv denied* 79 NY2d 854 [1992]). It is doubtful that eight years in prison will facilitate his potential to be rehabilitated; on the contrary, we should acknowledge the sad likelihood that such a lengthy prison experience may instead operate to foreclose the opportunity that may have previously existed for him to become a contributing member of society. Nor will this harsh sentence serve to alleviate the distress and pain suffered by the burglary victims; defendant's lengthy incarceration does not protect them from the trauma they have suffered, and there is no credible indication in this record that defendant poses a future danger to other potential innocent victims.

Accordingly, and without finding that County Court abused its discretion in denying youthful offender treatment to defendant, I most strongly believe that in light of these exceptional circumstances, this Court should exercise its discretion (*see People v Jeffrey VV.*, 88 AD3d 1159, 1160 [2011]; *People v Lyman HH.*, 215 AD2d 847, 848 [1995]; *People v Cannell*, 178 AD2d at 855-856; *People v Andrea FF.*, 174 AD2d 865, 867 [1991]; *People v Cruickshank*, 105 AD2d at 335-336) by vacating the convictions, adjudicating defendant to be a youthful offender and, in the interest of judicial economy, sentencing him to a prison term of 1 to 4 years, rather than remitting for sentencing (*see* Penal Law §§ 60.02 [2]; 70.00 [2] [e]; [3] [b]).

Ordered that the judgment is affirmed.