People v Z.H. (2020 NY Slip Op 07824)





People v Z.H.


2020 NY Slip Op 07824


Decided on December 23, 2020


Appellate Division, Fourth Department


Troutman, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, NEMOYER, TROUTMAN, AND BANNISTER, JJ.


1229 KA 18-01631

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
Z.H., DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (NATHANIEL V. RILEY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
GREGORY S. OAKES, SPECIAL PROSECUTOR, OSWEGO (AMY L. HALLENBECK OF COUNSEL), FOR RESPONDENT. 


Troutman, J.:
 Appeal from a judgment of the Onondaga County Court (Stephen J. Dougherty, J.), rendered July 20, 2018. The judgment convicted defendant upon a plea of guilty of assault in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed as a matter of discretion in the interest of justice, the conviction is deemed vacated and replaced by a youthful offender finding, and the matter is remitted to Onondaga County Court for sentencing.
Opinion by Troutman, J.:
On appeal from a judgment convicting her upon her plea of guilty of assault in the second degree (Penal Law § 120.05 [4]), defendant contends that she should be afforded youthful offender status. We agree.
I
This case arose from a fight in a high school that defendant attended as a student. Two days before the fight, another student began threatening defendant in person and over social media. Defendant avoided school the day after the threats began. The next day, the other student found defendant in the hallway of the school and struck her in the face. Defendant assumed a defensive posture, putting her head down and turning away, but the other student continued to strike defendant's head and face. Within seconds, a substitute teacher (victim) intervened, positioning his body between the fighting students. Defendant, sensing only that another person had jumped into the fray, lashed out at her perceived second attacker with a knife that she had concealed in her clothing. She struck the victim twice, causing a minor but permanent injury to his hand. Defendant was arrested and indicted. She entered a plea of guilty, and County Court agreed to consider youthful offender treatment at sentencing.
The record contains extensive presentencing materials, including a presentence report prepared by the probation department, a forensic psychological evaluation, and sentencing memoranda submitted by the defense. A letter from defendant to the victim contains what everyone agrees to be a genuine apology. In addition, the victim met with defendant in person while she was in jail and they spoke for 2½ hours in the presence of the prosecutor. The victim wrote an eloquent and detailed letter asking the court to afford defendant youthful offender status. The probation officer recommended youthful offender treatment. The prosecutor joined in that recommendation and spoke on defendant's behalf at sentencing. Nevertheless, the court denied defendant's request for youthful offender status. The court based its determination in part on the fact that felony charges were pending against defendant at the time of the fight and also considered whether she had received unduly favorable treatment as a result of her gender.
II
As a threshold matter, the court did not explicitly determine whether defendant is an eligible youth (see CPL 720.10 [2]). Because defendant was convicted of an armed felony, i.e., a violent felony that includes as an element "causing serious physical injury by means of a deadly weapon" (CPL 1.20 [41] [a]; see Penal Law §§ 70.02 [1] [c]; 120.05 [4]), she is not an eligible youth unless (i) "mitigating circumstances . . . bear directly upon the manner in which the crime was committed" or (ii) she "was not the sole participant in the crime" and her "participation was relatively minor although not so minor as to constitute a defense to the prosecution" (CPL 720.10 [3]). We conclude that the court implicitly resolved the issue in defendant's favor and that it properly did so because there are "mitigating circumstances" rendering her eligible for youthful offender treatment (id.; see People v Keith B.J., 158 AD3d 1160, 1160 [4th Dept 2018]).
III
Although "a valid waiver of the right to appeal . . . forecloses appellate review of a sentencing court's discretionary decision to deny youthful offender status once a court has considered such treatment" (People v Pacherille, 25 NY3d 1021, 1024 [2015]), we agree with defendant that we may review the court's determination not to afford her youthful offender status inasmuch as she did not waive her right to appeal. The court referred to a waiver of the right to appeal during the plea proceeding, but no oral waiver was elicited from defendant (see People v Norton, 96 AD3d 1651, 1651-1652 [4th Dept 2012], lv denied 19 NY3d 999 [2012]). We note that the better approach is to use the Model Colloquy, which "neatly synthesizes . . . the governing principles and provides a solid reference for a better practice" (People v Thomas, 34 NY3d 545, 567 [2019], cert denied — US — 140 S Ct 2634 [2020], citing NY Model Colloquies, Waiver of Right to Appeal).
IV
Defendant contends that the sentencing court abused its discretion in refusing, contrary to the universal recommendation, to afford her youthful offender status and, alternatively, asks us to exercise our own discretion to grant her such status. The People respond that the court's determination was not an abuse of discretion; in response to defendant's alternative contention, however, the People note that, at sentencing, they joined in defendant's request for youthful offender treatment. Although we do not conclude that the court abused its discretion in denying defendant youthful offender status, we choose to exercise our discretion in the interest of justice to determine that defendant is a youthful offender. Accordingly, we conclude that the judgment should be reversed and the conviction deemed vacated and replaced by a youthful offender finding, and we remit the matter to County Court for sentencing on the finding (see Keith B.J., 158 AD3d at 1161).
The youthful offender laws "emanate from a legislative desire not to stigmatize youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" (People v Drayton, 39 NY2d 580, 584 [1976], rearg denied 39 NY2d 1058 [1976]; see People v Amir W., 107 AD3d 1639, 1640 [4th Dept 2013]). The central question is whether a defendant should be afforded an "opportunity for a fresh start, without a criminal record" because such an "opportunity is likely to turn the young offender into a law-abiding, productive member of society" (People v Rudolph, 21 NY3d 497, 501 [2013]; see People v Francis, 30 NY3d 737, 741 [2018]). The factors to be considered include the nine Cruickshank factors, i.e., "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (People v Cruickshank, 105 AD2d 325, 334 [3d Dept 1985], affd 67 NY2d 625 [1986]; see Keith B.J., 158 AD3d at 1160; Amir W., 107 AD3d at 1640). As discussed below, we conclude that all nine factors favor defendant.
(1) Gravity of the crime and manner in which it was committed
Although the crime is certainly a serious one, the gravity of the crime is mitigated to a great degree by the manner in which it was committed. Video of the event establishes the undisputed fact that defendant was not the aggressor in the fight. After being struck, defendant lowered her head and body into a defensive position. She was carrying a knife because she had been subjected to physical assaults and recent threats of assault, and she used the knife in self-defense. Her use of a knife, to be sure, was reckless and disproportionate to the attack that she was forced to endure, but it is equally clear that she did not intend to harm a school teacher. It would have been better, as the court stated, for defendant to have told an adult about the bullying than for her to carry a knife. However, the adults in defendant's life had never been a source of protection: her mother had cognitive disabilities that rendered her ineffectual in this regard, her father was absent from her life, and other family members abused her. Faced with the threat of a violent attack in her school, defendant had few options—none of them good—and, although her decision to carry a knife in order to protect herself was without a doubt the wrong choice, we conclude that her use of the knife was a "hasty or thoughtless" act that cannot be seen as the serious deed of a "hardened criminal[]" (Drayton, 39 NY2d at 584).
(2) Mitigating circumstances
The court properly weighed that factor in defendant's favor. In addition to the mitigating factors discussed above, defendant took full advantage of the available educational opportunities while she was incarcerated, obtaining her diploma, participating in vocational programs, earning the certificates related to those programs, making frequent use of the jail's library, and earning acceptance into a college that she wished to attend upon her release.
(3) Defendant's prior criminal record
Defendant had no prior criminal convictions. Although she had been charged in prior felonies related to shoplifting incidents, those charges were dismissed in satisfaction of the guilty plea and thus were not part of her prior criminal record.
(4) Prior acts of violence
The most important evidence in the record concerning defendant's tendency towards violence is contained in the evaluation of the forensic psychologist: "Her vulnerability seemingly was heightened by her lack of aggressiveness and her unwillingness to fight others." It was precisely defendant's avoidance of violence that caused her to become a target of violence. There is only one alleged prior act of violence documented in the record. Specifically, defendant fought a store clerk who tried to stop her from shoplifting. Although that act was characterized, likely by the prosecution, as defendant having "punched" the store clerk and "slammed" her head into the ground, that characterization is called into question by the fact that the clerk was uninjured and defendant was not charged with assault. In our view, that unproved and uncharged act should be given limited weight. Such an act, according to the evaluation by the forensic psychologist, is out of character for defendant. At worst, the incident is an isolated act that does not warrant denial of youthful offender status.
(5) Recommendations in the presentence reports
Youthful offender treatment was recommended in the presentence report, by the People, and in a letter from the victim.
(6) Defendant's reputation
The court made no finding with respect to defendant's reputation, but there is plenty of information in the record. In addition to the forensic psychologist's assessment of defendant's reputation for avoiding violence, which made her a target of violence, we note the following unrefuted story about the reputation that defendant developed while in jail:
[S]hortly before her 18th birthday, there were only two girls left on the pod. [Defendant's] mother had given her the tragically false hope that she could post her bail. Knowing what it was [*2]like to endure de facto solitary confinement, [defendant] asked that her mother be given the message to wait until the other girl's court date, when she was expected to be released, so [the other girl] would not be left alone.
We conclude that the reputation factor strongly favors defendant.
(7) Level of cooperation with authorities
The court properly found that the factor favors defendant inasmuch as she pleaded guilty and took responsibility for her actions and had already been performing community service to atone for the pending charges.
(8) Defendant's attitude toward society and respect for the law
The court appeared to weigh that factor in defendant's favor, and properly did so, upon its finding that defendant "now" has respect for the law. However, the court also noted that it did not believe that defendant had respect for the law "before." A youthful offender determination requires a forward-looking analysis. As noted above, the court must ask whether the defendant is the kind of person who deserves an "opportunity for a fresh start, without a criminal record" because such an "opportunity is likely to turn the young offender into a law-abiding, productive member of society" (Rudolph, 21 NY3d at 501). In other words, the court must consider the defendant's present and likely future attitude, not the attitude that the defendant displayed during the commission of the underlying crime. In our view, that factor unequivocally favors defendant because the record supports the court's finding that defendant "now" displays respect for the law.
(9) Prospects for rehabilitation and hope for a future constructive life
That factor more than any other lies at the heart of the matter, and the court properly weighed it in defendant's favor. The general consensus here is that defendant was successfully rehabilitated by the day of her sentencing.
V
In addition to the Cruickshank factors, the parties raised and the court considered additional matters related to equity and discrimination. We reject defendant's contention that the court abused its discretion in considering matters outside the Cruickshank factors. The applicable precedent states that the factors that must be considered "include" those nine factors (Cruickshank, 105 AD2d at 334; see also Amir W., 107 AD3d at 1640), and thus, as a matter of logic, those factors were never meant to be an exhaustive list of considerations. We conclude that matters of equity and discrimination are appropriate for sentencing courts to consider. Although we do not conclude that the court abused its discretion, we urge future courts to consider whether a defendant may be facing discrimination based on protected characteristics such as race or gender and to take an intersectional approach by considering the combined effect of the defendant's specific characteristics and any bias that may arise therefrom [FN1]. Here, the prosecutor employed appropriate and effective restorative justice techniques and advocated for [*3]the result he believed just. We note that "prosecutors have 'special responsibilities . . . to safeguard the integrity of criminal proceedings and fairness in the criminal process' " (People v Huntsman, 96 AD3d 1387, 1388 [4th Dept 2012], lv denied 20 NY3d 1099 [2013], quoting People v Santorelli, 95 NY2d 412, 421 [2000]), and this prosecutor deserves to be commended for discharging those responsibilities here.
Entered: December 23, 2020
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: For example, prosecutors are far less likely to exercise their discretion to dismiss in cases against black girls, such as defendant, than they are in cases against white girls (see Samantha Ehrmann et al., Girls in the Juvenile Justice System at 13, Juvenile Justice Statistics, National Report Series Bulletin [April 2019], Office of Juvenile Justice and Delinquency Prevention, available at https://ojjdp.ojp.gov/sites/g/files/xyckuh176/files/pubs/251486.pdf [accessed Dec. 8, 2019]; Kim Taylor-Thompson, Girl Talk—Examining Racial and Gender Lines in Juvenile Justice, 6 Nev LJ 1137, 1137 [2006] ["Prosecutors dismiss seven out of every ten cases involving white girls as opposed to three out of every ten cases for African American girls"]).