People v Davonte S.B. (2024 NY Slip Op 03635)

People v Davonte S.B.

2024 NY Slip Op 03635

Decided on July 3, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 3, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CURRAN, MONTOUR, NOWAK, AND DELCONTE, JJ.

402 KA 23-00651

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAVONTE S.B., ALSO KNOWN AS DAVONTA S.B., DEFENDANT-APPELLANT.

SARAH S. HOLT, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Monroe County Court (Victoria M. Argento, J.), rendered May 14, 2015. The judgment convicted defendant upon a guilty plea of robbery in the second degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is reversed as a matter of discretion in the interest of justice, the conviction is vacated, and defendant is adjudicated a youthful offender and sentenced in accordance with the following memorandum: Defendant appeals from a judgment convicting him upon his plea of guilty of two counts of robbery in the second degree (Penal Law § 160.10 [1], [2] [a]).
We agree with defendant, and the People properly concede, that he did not validly waive his right to appeal. Here, County Court's oral colloquy mischaracterized the waiver "as encompassing not only an absolute bar to the taking of a direct appeal and the loss of attendant rights of counsel and poor person relief, but also all postconviction relief separate from the direct appeal" (People v Thomas, 34 NY3d 545, 565 [2019], cert denied — US —, 140 S Ct 2634 [2020]; see People v Shea'honnie D., 217 AD3d 1419, 1420 [4th Dept 2023]). Furthermore, the written waiver executed by defendant did not contain any clarifying language to correct deficiencies in the oral colloquy and, indeed, perpetuated the oral colloquy's mischaracterization of the waiver of the right to appeal (see Thomas, 34 NY3d at 566; Shea'honnie D., 217 AD3d at 1420). Because the purported waiver of the right to appeal is unenforceable, it does not preclude our review of defendant's challenge to the court's refusal to grant him youthful offender status (see Shea'honnie D., 217 AD3d at 1420; see also People v Johnson, 182 AD3d 1036, 1036 [4th Dept 2020], lv denied 35 NY3d 1046 [2020]).
We further agree with defendant that he should be afforded youthful offender status. In determining whether to afford a defendant youthful offender status, "a court must consider the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (People v Keith B.J., 158 AD3d 1160, 1160 [4th Dept 2018] [internal quotation marks omitted]; see People v Cruickshank, 105 AD2d 325, 334 [3d Dept 1985], affd 67 NY2d 625 [1986]). "[T]he Appellate Division may exercise its interest of justice jurisdiction to adjudicate a defendant a youthful offender even if it does not conclude that the trial court abused its discretion in denying youthful offender treatment" (People v Nicholas G., 181 AD3d 1273, 1273 [4th Dept 2020] [internal quotation marks omitted]).
Here, the factors weighing against affording defendant youthful offender treatment are the [*2]seriousness of the offense, defendant's alleged gang affiliation, and defendant's failure to complete interim probation (see Keith B.J., 158 AD3d at 1160; People v Shrubsall, 167 AD2d 929, 930 [4th Dept 1990]). However, defendant was 15 years old at the time of the crime and had no prior criminal record. He accepted responsibility for his actions and cooperated with both police on the date of the incident and probation during his presentence report interview. According to his probation officer, although he had not yet begun substance abuse treatment in the extremely short period of time between his release from custody and his remand, he "report[ed] as directed, and ha[d] not secured any new charges." Probation described defendant as "[m]otivated to avoid further difficulties" and his prognosis for lawful behavior as "guarded." Indeed, probation asked that defendant's "sentencing be adjourned for sixty days to allow . . . defendant the opportunity to be placed on electronic monitoring through Probation." In addition, despite the senseless nature of this incident, defendant did not use a weapon, there is no allegation that this crime was gang-related, defendant was the youngest participant in the crime by approximately three years, and it was clearly an unplanned, spur-of-the-moment decision for which youthful offender adjudication is meant (see People v Z.H., 192 AD3d 55, 58 [4th Dept 2020]; cf. People v Simpson, 182 AD3d 1046, 1047 [4th Dept 2020], lv denied 35 NY3d 1049 [2020]; see also Keith B.J., 158 AD3d at 1160-1161). Therefore, we reverse the judgment as a matter of discretion in the interest of justice, vacate the conviction, and adjudicate defendant a youthful offender. We impose the same sentence on the adjudication that was previously imposed on the conviction (see Nicholas G., 181 AD3d at 1274).
All concur except Smith, J.P., and Curran, J., who dissent and vote to affirm in the following memorandum: We respectfully dissent and vote to affirm inasmuch as, upon our review of the record and consideration of other applicable factors pertinent to a youthful offender determination, we perceive no basis for exercising our own discretion in the interest of justice to adjudicate defendant a youthful offender (see People v Blake, 227 AD3d 1421, 1422 [4th Dept 2024]; People v Hall, 221 AD3d 1600, 1600-1601 [4th Dept 2023], lv denied 40 NY3d 1092 [2024]; People v Graham, 218 AD3d 1359, 1360 [4th Dept 2023], lv denied 40 NY3d 1039 [2023]). Initially, we agree with the majority that several important factors support County Court's discretionary determination not to afford defendant a youthful offender adjudication—i.e., the seriousness of the underlying offenses, defendant's alleged gang affiliation, and defendant's failure to successfully complete interim probation. Unlike the majority, however, we conclude that there are several other factors present in the record that strongly militate against adjudicating defendant a youthful offender.
First, we disagree with the majority that defendant's lack of a criminal history supports adjudicating him a youthful offender. Indeed, the majority's characterization that defendant "had no prior criminal record" is true only by virtue of the fact that he previously faced prosecution at a time when he was under the age of criminal responsibility and instead was adjudicated a juvenile delinquent (see Penal Law § 30.00 [1]). We note that, in evaluating the factors relevant to making a youthful offender determination, nothing precludes courts from considering prior juvenile delinquency adjudications (see e.g. People v Mix, 111 AD3d 1417, 1418 [4th Dept 2013]; People v Washpun, 41 AD3d 1233, 1233 [4th Dept 2007], lv denied 9 NY3d 883 [2007]; see generally People v Cruickshank, 105 AD2d 325, 334 [3d Dept 1985], affd 67 NY2d 625 [1986]). Here, the record reflects that defendant was previously charged as a juvenile with, inter alia, robbery in the second and third degrees, grand larceny in the fourth degree, and criminal possession of stolen property in the fifth degree. Ultimately, he was adjudicated a juvenile delinquent for criminal possession of stolen property in the fifth degree and was sentenced to probation. Approximately one month later, however, defendant admitted that he violated the terms of his juvenile probation, causing the court to resentence him to a one-year placement with the Office of Child and Family Services (OCFS) (see People v Brodhead, 106 AD3d 1337, 1337 [3d Dept 2013], lv denied 22 NY3d 1087 [2014]). The instant offense occurred approximately one year after defendant started his placement with OCFS, presumably shortly after his release. Thus, although it is technically true that defendant has no criminal history, relying on that fact to support affording him the benefits of a youthful offender adjudication would be potentially misleading to the extent it suggests that the underlying offense constituted defendant's first experience with the criminal justice system.
Second, we also disagree with the majority's conclusion that defendant "accepted responsibility for his actions." During his interview with the Department of Probation, defendant recanted on the underlying crime, despite his guilty plea, and instead blamed his codefendants. [*3]Specifically, defendant stated that he did nothing to assist the codefendants in committing the robbery and that he was merely an observer; indeed, he claimed to have told them he would not help with the robbery and that he did not want to get in trouble. Defendant also stated during his interview that he falsely confessed to committing the underlying crime because he did not want the codefendants to get into trouble. He further stated his belief that it was unfair for him to be "in jail for something he 'didn't do' " (see People v Ford, 144 AD3d 1682, 1683 [4th Dept 2016], lv denied 28 NY3d 1184 [2017]; cf. People v Keith B.J., 158 AD3d 1160, 1160-1161 [4th Dept 2018]). Relatedly, we note that the majority's conclusion that defendant cooperated with the police is not entirely accurate and overstates its importance. Defendant's cooperation consisted merely of him stating, "I did it," a statement made after he was identified by the victim at a show up that he refused to confirm in writing (cf. People v Amir W., 107 AD3d 1639, 1641 [4th Dept 2013]).
Third, the court was very clear at the time of the plea that, if defendant successfully completed his period of interim probation, it would formally sentence him to five years of probation and would adjudicate him a youthful offender. It cautioned defendant, however, that if he was unsuccessful with interim probation, it would sentence him to any sentence permitted by law, up to the maximum of 2&frac13; to 7 years in prison. In other words, the court made clear that the youthful offender adjudication would be unavailable at that point. Despite the court's admonitions, defendant failed interim probation almost immediately (see People v Ternoois, 151 AD3d 1779, 1780 [4th Dept 2017]; People v Lewis, 128 AD3d 1400, 1401 [4th Dept 2015], lv denied 25 NY3d 1203 [2015]). Specifically, he failed to comply with the Department of Probation's request to obtain a chemical dependency and mental health evaluation. Indeed, he admitted that, rather than comply with that term of his interim probation, defendant continued to regularly use marihuana. Further, while on interim probation, he received a five-day suspension from high school for fighting (see People v Wilson, 165 AD3d 1323, 1325 [3d Dept 2018]). Defendant had recently transferred to a new high school because he regularly got into fights with other students at his old school.
Ultimately, given defendant's history of juvenile delinquency, his immediate failure at interim probation, his relative lack of cooperation with law enforcement, and his total denial of responsibility during his probation interview, we see no abuse of discretion by County Court in declining to adjudicate defendant a youthful offender—indeed, the majority itself tacitly concludes that the court did not abuse its discretion. For many of the same reasons, we further perceive no basis upon which to exercise our own discretion to grant him that status (see People v Davis, 188 AD3d 1731, 1732 [4th Dept 2020], lv denied 37 NY3d 991 [2021]).
Entered: July 3, 2024
Ann Dillon Flynn
Clerk of the Court