People v Hall (2025 NY Slip Op 06366)

People v Hall

2025 NY Slip Op 06366

Decided on November 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 20, 2025

CR-24-1456
[*1]The People of the State of New York, Respondent,
v
Mckyle Hall, Appellant.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Thomas Eddy, New Rochelle, for appellant.
Lee C. Kindlon, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Powers, J.
Appeal from a judgment of the Supreme Court (Roger McDonough, J.), rendered May 30, 2024 in Albany County, upon a verdict convicting defendant of the crime of attempted assault in the first degree.
Following an altercation on the campus of the State University of New York at Albany in September 2022, during which the victim suffered stab and slash wounds to her abdomen and arm, defendant was charged by indictment with attempted murder in the second degree, assault in the first degree, attempted assault in the first degree and assault in the second degree. Defendant was convicted, after a jury trial, of the sole count of attempted assault in the first degree (see Penal Law §§ 110.00, 120.10 [1]) and acquitted of the remaining counts charged in the indictment. He then moved to set aside the verdict pursuant to CPL 330.30 on the grounds of, as is relevant here, repugnancy and juror confusion as evidenced by affidavits from some of the sworn jurors. Supreme Court denied the motion and sentenced defendant to a five-year prison term, to be followed by five years of postrelease supervision. In so sentencing defendant, the court denied his request to be adjudicated as a youthful offender and heard a victim impact statement from the victim's father. Defendant appeals.
Initially, by failing to object to the verdict before the jury was discharged, defendant has not preserved his claim that the verdict was repugnant in view of his acquittal on the remaining counts (see People v Carter, 7 NY3d 875, 876 [2006]; People v Colvin, 218 AD3d 1016, 1021 [3d Dept 2023], lv denied 40 NY3d 1038 [2023]; People v Leigh, 208 AD3d 1463, 1465 [3d Dept 2022]). We decline defendant's request that this Court take corrective action in the interest of justice (see CPL 470.15 [3] [c]; People v Dale, 115 AD3d 1002, 1006-1007 [3d Dept 2014]; see generally People v Muhammad, 17 NY3d 532, 539-540 [2011]).
Turning to defendant's assertion that the conviction is not supported by the weight of the evidence, when undertaking such review, "this Court must view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Robbins, 236 AD3d 1097, 1098-1099 [3d Dept 2025] [internal quotation marks and citations omitted]). "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he [or she] causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.10 [1]). Relatedly, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00). Thus, there [*2]must be proof that the defendant "intended and came dangerously close to engaging in" the prohibited act (People v Butkiewicz, 175 AD3d 792, 793 [3d Dept 2019] [internal quotation marks and citation omitted], lv denied 34 NY3d 1076 [2019]).
Defendant only presently raises issue with respect to the element of intent, claiming that the evidence did not establish that he intended to cause serious physical injury to the victim. Although a different verdict would not have been unreasonable had the jury credited defendant's testimony that he did not intend to injure the victim (see People v Contompasis, 236 AD3d 138, 143 [3d Dept 2025], lv denied 43 NY3d 1007 [2025]; People v LaDuke, 204 AD3d 1083, 1087 [3d Dept 2022], lv denied 38 NY3d 1072 [2022]), we do not find the verdict to be against the weight of the evidence. The evidence adduced at trial, viewed in a neutral light, established that defendant brought a knife to an ongoing verbal disagreement between his friend and his friend's girlfriend. After he made a derogatory remark directed toward the victim, a physical altercation arose between defendant and the victim. During the course of this physical altercation, defendant removed the knife from his pocket and the victim was stabbed and/or slashed with that knife. Defendant then fled the scene in a vehicle with two friends, including his friend who had been involved in the initial verbal disagreement.
The jury rejected defendant's explanation of the events in question, namely, that he did not intend to harm the victim and that the victim's injuries were the result of an accident after he removed the knife from his pocket for his own safety in the face of an allegedly advancing crowd. Instead, the jury credited the evidence proffered by the People, including a text message exchange wherein defendant was asked to bring the knife to the ongoing verbal disagreement, witness testimony describing that defendant was seen swinging his arms at the victim during the altercation, was observed to be in possession of said knife and that no other members of the crowd were involved in the altercation. The jury found that defendant possessed the requisite intent based upon these surrounding circumstances and we defer to that credibility determination (see People v Baque, 43 NY3d 26, 30 [2024]; People v LaDuke, 204 AD3d at 1087; cf. People v Fisher, 221 AD3d 1355, 1358-1359 [3d Dept 2023], lv denied 40 NY3d 1092 [2024]). Accordingly, the verdict finding defendant guilty of attempted assault in the first degree is not against the weight of the evidence (see People v Contompasis, 236 AD3d at 144; People v Lewis, 224 AD3d 1143, 1148 [3d Dept 2024], lv denied 42 NY3d 939 [2024]; People v Stines, 212 AD3d 883, 887 [3d Dept 2023], lv denied 39 NY3d 1113 [2023]). This is not nullified by the fact that the jury seemingly could have convicted defendant of either assault in the first degree or assault in the second degree as it is uncontested that the victim sustained serious [*3]physical injuries — which included major abdominal surgery and the removal of parts of her intestines and stomach — considering that "[a]n intermediate appellate court conducting a weight of the evidence review of a mixed jury verdict may take into account the possibility that the jury has not necessarily acted irrationally, but instead has exercised mercy" (People v Joseph, 235 AD3d 898, 899 [2d Dept 2025] [internal quotation marks and citations omitted], lv denied 43 NY3d 964 [2025]; see People v Muhammad, 17 NY3d at 540; People v Johnson, 197 AD3d 725, 726 [2d Dept 2021], lv denied 37 NY3d 1097 [2021]).
Defendant next challenges the denial of his request to be adjudicated as a youthful offender. Defendant was presumptively eligible for youthful offender adjudication,[FN1] therefore, Supreme Court was required to consider whether, among other things, "the interest of justice would be served by relieving [him] from the onus of a criminal record" and capping his sentence at an indeterminate four-year prison term (CPL 720.20 [1] [a]). "Longstanding authority holds that the factors to be considered include the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (People v Terry, 238 AD3d 1387, 1389 [3d Dept 2025] [internal quotation marks, brackets and citations omitted], lv denied 44 NY3d 984 [2025]). "The decision to grant or deny youthful offender status rests within the sound exercise of the sentencing court's discretion" (People v Vanderhorst, 235 AD3d 1089, 1090 [3d Dept 2025]). Accordingly, this Court may "review youthful offender adjudications for abuse of discretion, or under its broad interest-of-justice jurisdiction" (People v Anthony C., 25 NY3d 937, 938 [2015], citing CPL 470.15 [6] [b]; 720.20 [1] [a]).
In support of the request, defendant's trial counsel noted that multiple jurors had provided letters in relation to defendant's CPL 330.30 motion in which these jurors indicated that they believed the conviction was unjust. In response, Supreme Court stated that it would not consider these letters in the context of the sentence to be imposed as the jury is not involved in sentencing. Nevertheless, trial counsel went on at length as to how defendant's conviction was unjust and that defendant "should not be sentenced" in the first instance. Trial counsel then set forth that, if the court does wish to sentence defendant, it should sentence him to the minimum and grant youthful offender status, without further extrapolation on this point. Defendant stated on his own behalf that he was sorry for the events that transpired but that he was trying to protect himself and did not intend to harm the victim. He noted [*4]that this was his first involvement with the criminal justice system, that he was in college when the incident occurred, he continued to attend college and attained a job during these proceedings. Based upon these factors, defendant requested the imposition of a 4½-year term of incarceration. In opposition, the People asked that the maximum permissible prison term of 15 years be imposed.
Initially, Supreme Court noted that it had received multiple letters in support of defendant which indicated that he was of "upstanding character." The court agreed with defendant's assertion that this was his first involvement with the criminal justice system and that he had avoided circumstances like this in the past. The court considered these facts in imposing the sentence, but also that there was no evidence that any other individual had been involved in the physical altercation between defendant and the victim. The court expressly disbelieved defendant's explanation that he carried the knife at all times because he feared for his safety, in view of the fact that defendant's presence with the knife was explicitly requested. The court noted that if defendant was truly afraid for his safety the appropriate response would be to call campus police, not show up to the fight with knife in tow. The court also paid importance to defendant's failure to take accountability or acknowledge that his actions caused the victim's injury, despite having expressed generalized sympathy for the victim. The court found that, although eligible for youthful offender status, the circumstances of the crime did not warrant granting the request and imposed a five-year term of incarceration.
"[T]he purpose of according youthful offender treatment is to avoid stigmatizing youths between the ages of 16 and 19 with criminal records triggered by hasty or thoughtless acts which, although crimes, may not have been the serious deeds of hardened criminals" (People v Cha-Narion D., 232 AD3d 1131, 1133 [3d Dept 2024] [internal quotation marks and citations omitted]). That purpose would not be served by granting defendant's request here. To begin, trial counsel's argument that the conviction was unjust and defendant's related assertion that he did not intend to injure the victim both go to defendant's guilt, a matter resolved by the guilty verdict reached by the jury after trial and not, as defendant seemed to advance, a sentencing consideration. It is true that this was defendant's first involvement with the criminal justice system and he is not a "hardened criminal," however we must note that the facts presented demonstrate that the crime at issue was not the result of a "hasty or thoughtless act[ ]" on the part of defendant as intended by the Legislature. Rather, defendant's presence with the knife was specifically requested at the location of the ongoing verbal disagreement and, upon arrival, defendant inserted himself into that disagreement and elevated it to a physical altercation, during [*5]which he ultimately utilized that knife to cause injuries to the victim. This level of forethought is not consistent with actions that can be classified as "hasty or thoughtless." Interestingly, the trial proof also evidences that defendant harbored some level of indifference when it comes to violence against women — going so far as telling a friend that a different woman deserved to be punched in the face because her breath smelled badly. Even crediting that this was a joke, defendant's actions here are concerningly similar to this prior statement. Specifically, defendant told the victim here that he "slap[s] b***hes like [her]," and then when she stood up for herself — albeit through violence — he escalated the situation from fisticuffs to a potentially deadly altercation. If the victim was the instigator, as defendant claims, this does not excuse his actions. Moreover, as Supreme Court noted at sentencing, defendant did not take accountability for his role in the underlying altercation and has consistently advanced that the victim was in some way responsible for her own injuries.
Based upon these facts, we discern no basis upon which to disturb Supreme Court's discretionary denial of defendant's request for youthful offender treatment (see People v Quarterman, 238 AD3d 1385, 1387 [3d Dept 2025]; People v Wimberly, 228 AD3d 1177, 1179 [3d Dept 2024], lv denied 42 NY3d 1022 [2024]; People v Moon, 176 AD3d 1265, 1266 [3d Dept 2019], lv denied 34 NY3d 1080 [2019]). Most notably, the facts defendant points to that weigh in favor of his request were plainly considered by the court in imposing a sentence at the bottom end of the legally permissible term for defendant's conviction (see Penal Law § 70.02 [3] [b]; see also Penal Law §§ 70.02 [1] [a]-[b]; 110.00, 120.10 [1]). Likewise, considering defendant's age (compare People v Lyman HH., 215 AD2d 847, 848 [3d Dept 1995]),[FN2] the severe injuries sustained by the victim (compare People v Cha-Narion D., 232 AD3d at 1134), the manner in which the crime was committed and defendant's refusal to take accountability for his actions (compare People v Thomas R.O., 136 AD3d 1400, 1403 [4th Dept 2016]; People v Jeffrey VV., 88 AD3d 1159, 1160 [3d Dept 2011]), we do not believe that this is a case where the invocation of our interest of justice jurisdiction is warranted (compare People v Cruickshank, 105 AD2d 325, 335 [3d Dept 1985], affd sub nom. People v Dawn Maria C., 67 NY2d 625 [1986]). In brief, "we are unpersuaded that the factors identified by defendant warrant a substitution of our own discretion to grant defendant youthful offender status" (People v Terry, 238 AD3d at 1389 [internal quotation marks and citations omitted]).[FN3]
Defendant finally maintains that Supreme Court violated CPL 380.50 (2) (a) (2) by allowing the victim's father to provide a victim impact statement without elucidation on the record that the victim was unwilling or unable to provide a statement on her own behalf. Despite having prior [*6]notice thereof, defendant failed to raise any objection to the father's statement at a time when it could have been easily remedied. As a result, this claim is unpreserved for our review, and we decline to reach it in the interest of justice (see People v Russell, 203 AD3d 1081, 1081 [2d Dept 2022], lv denied 38 NY3d 1035 [2022]; see also People v Morales-Lopez, 110 AD3d 1248, 1249 [3d Dept 2013], lvs denied 22 NY3d 1140 [2014]; People v Cianfarani, 81 AD3d 998, 999 [3d Dept 2011]; see generally People v Hemmings, 2 NY3d 1, 6 [2004] ["Nothing in the . . . language or legislative history (of CPL 380.50 [2]) suggests . . . that the provision was intended to otherwise restrict a sentencing court's discretionary authority to allow others close to the victim to address the court at sentencing and we therefore decline to read such a limitation into the statute."]).
Garry, P.J., Pritzker and Mackey, JJ., concur.
McShan, J. (dissenting).
I respectfully dissent only with respect to the discrete issue of my colleagues' affirmance of Supreme Court's denial of youthful offender status. In doing so, I am cognizant that we generally defer to the discretionary determinations of the sentencing court. In this instance, although Supreme Court chose not to grant youthful offender status, it imposed a sentence that exceeds the permissible period of incarceration for youthful offenders by one year. I am generally in accord with the length of the sentence imposed; however, it is my view that declining to adjudicate defendant as a youthful offender was an improvident exercise of discretion, as it will unnecessarily burden this defendant with the heavy weight of a criminal record, a consequence that could have a profound effect on his ability to become a productive member of society. Based upon the facts and circumstances of this particular case, I believe that denying defendant such status does not serve the ends of justice.
The relevant factors to be considered upon an application for youthful offender status are well established, and include "the gravity of the crime and manner in which it was committed, mitigating circumstances, defendant's prior criminal record, prior acts of violence, recommendations in the presentence reports, defendant's reputation, the level of cooperation with authorities, defendant's attitude toward society and respect for the law, and the prospects for rehabilitation and hope for a future constructive life" (People v Cruickshank, 105 AD2d 325, 334 [3d Dept 1985], affd sub nom. People v Dawn Maria C., 67 NY2d 625 [1986]). In denying defendant youthful offender status, Supreme Court noted its familiarity with the case and ultimately found that "youthful offender status [was not] an appropriate response or sentence in a case of this nature, of this violence." Leaving no doubt, defendant's criminal conduct constituted an egregious lack of judgment, and I am in no way diminishing its severity. Defendant willingly chose to bring a knife to an [*7]altercation without good reason and, crediting the trial testimony describing that encounter, chose to utilize the knife in the absence of any justification. The victim now has to live with both the mental and physical scars from that encounter. Those facts cannot and should not be minimized, and, on that, I believe that a significant term of imprisonment is wholly appropriate. However, acknowledging that the conduct at issue is indeed severe, I note that the Legislature allows for criminal conduct, such as the crime at issue, to be eligible for youthful offender status, "manifest[ing] its intent that this factor alone does not mandate denial of such treatment" (People v Strong, 152 AD3d 1076, 1079 [3d Dept 2017, Garry, J., dissenting]; see People v Cha-Narion D., 232 AD3d 1131, 1134 [3d Dept 2024]). Although Supreme Court's focus on the severity of the crime is understandable, it is my view that weighing all of the appropriate factors for consideration on a youthful offender status, on balance, tips the scales in favor of granting defendant such relief.
The presentence report [FN4] indicates that defendant was generally cooperative in the interview process, only declining to discuss the present offense on the advice of counsel in light of his pending appeal. Prominent in the report's findings is the fact that defendant's criminal conduct was aberrational and "out of character," as it constituted his first and only contact with the criminal justice system as of that time.[FN5] Defendant's blemish-free history also extended to his time in school, reflected by the absence of any disciplinary records. On his educational endeavors, defendant had demonstrated his commitment to bettering himself academically during his enrollment in college in New Hampshire, achieving high marks prior to transferring to the State University of New York at Albany. Defendant reiterated at sentencing that, irrespective of the length of his sentence, he was committed to completing his education. He has no relevant history of substance abuse and has a long history of gainful employment. Importantly, he enjoys a strong relationship with his family, who has provided him a stable upbringing and home life, which is reflected in the many letters in support written by family, friends and members of defendant's community speaking to his good character and reputation. Those letters reflect that defendant will enjoy a solid support system upon the completion of his term of incarceration, one that is committed to his potential for redemption.
All told, it is my view that these factors are indicative that defendant has a strong likelihood of successfully reentering and becoming a productive member of society at the conclusion of his sentence. However, that path can easily be derailed by the stigma associated with a conviction of this nature (see generally Kevin Lapp, Young Adults & Criminal Jurisdiction, 56 Am Crim L Rev 357, 379 [2019]; Nancy Ginsburg, Reimagining the Role of Defense Counsel [*8]for Adolescents in the Adult Criminal Court System: Bringing the Community and Policymakers into the Process to Achieve the Goals of Gideon, 35 Cardozo L Rev 1117, 1125 [2014]). "Youthful offender status permits the court to mete out fair punishment for a young adult's crimes and transgressions yet mitigates future consequences in recognition of, [among other things], the youth's lack of experience and the court's hope for his future constructive life" (People v Cruickshank, 105 AD2d at 333-334 [internal quotation marks and citation omitted]; accord People v Cha-Narion D., 232 AD3d at 1133). In that respect, "[y]outhful offender designations are given to those who have a real likelihood of turning their lives around, and the protection gives these individuals the opportunity for a fresh start, without a criminal record" (People v Guerra, 39 NY3d 1158, 1159-1160 [2023] [internal quotation marks and citation omitted]). That is precisely what the facts of this case present: an individual who made a grave mistake but appears motivated to redeem himself. In my view, although defendant's crime is significant, justice is better served by imposing a sentence that is commensurate with the severity of his crime while also permitting him to become a productive member of society upon release, which will occur at a critical time in his transition to adult life (see People v Jeffrey VV., 88 AD3d 1159, 1160 [3d Dept 2011]; People v Lyman HH., 215 AD2d 847, 848 [3d Dept 1995]; People v Shrubsall, 167 AD2d 929, 930 [4th Dept 1990]).[FN6]
I am cognizant that a youthful offender status determination is fact specific and that we should be judicious in setting aside the discretionary determinations of Supreme Court in that respect. However, I would note that granting youthful offender status to this defendant and imposing the maximum term allowable — four years — would not have a great impact on the term of incarceration imposed by Supreme Court. Consequently, although I do not believe that it was an abuse of Supreme Court's discretion to deny youthful offender treatment to defendant, I believe this case calls out for an exercise of our independent discretion in the interest of justice on this discrete issue (see People v Cha-Narion D., 232 AD3d at 1134; People v Marcel G., 183 AD3d 667, 667 [2d Dept 2020]; People v Darius B., 145 AD3d 793, 794 [2d Dept 2016]; People v Thomas R.O., 136 AD3d 1400, 1403 [4th Dept 2016]; People v Charles S., 102 AD3d 896, 896 [2d Dept 2013]; People v Jeffrey VV., 88 AD3d at 1160; People v Cruickshank, 105 AD2d at 335).[FN7] I would therefore vacate the conviction, adjudicate defendant to be a youthful offender and, in the interest of judicial economy, sentence him to the maximum four-year term of imprisonment (see CPL 720.20 [1] [a]; [3]; Penal Law §§ 60.02 [2]; 70.00 [2] [e]).
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: Attempted assault in the first degree is defined as a violent felony offense pursuant to Penal Law § 70.02 (1) (a)-(b). However, as charged in the indictment, defendant was alleged to be in possession of a "dangerous instrument," rather than a "deadly weapon" as required to be classified as an "[a]rmed felony" under CPL 1.20 (41). Therefore, this is not a case where "the conviction to be replaced by a youthful offender finding is for . . . an armed felony as defined in [CPL 1.20 (41)]," which would have rendered defendant presumptively ineligible for youthful offender adjudication (CPL 720.10 [2] [a] [ii]).

Footnote 2: Defendant was approximately 3½ months shy of his 19th birthday at the time the crime was committed, at which point he would have been categorically ineligible for youthful offender adjudication (see CPL 720.10 [1]; People v Gutierrez, 140 AD3d 407, 408 [1st Dept 2016]). Thus, while defendant's age did not render him ineligible here, it is a factor which this Court may consider in determining whether invocation of our interest of justice jurisdiction is warranted (see People v Randell T., 121 AD3d 439, 439-440 [1st Dept 2014]; People v Lyman HH., 215 AD2d at 848; cf. People v Myers, 163 AD3d 1152, 1155 [3d Dept 2018]; People v Boyce, 2 AD3d 984, 987 [3d Dept 2003], lv denied 2 NY3d 796 [2004]).

Footnote 3: In advancing this argument to this Court, defendant's counsel described the victim as a "teen drama queen." In doing so, counsel crossed the line from what may be seen as zealous representation and, instead, presented an objectionable minimization of the facts presented. While we do not fault defendant in any way for this offensive language, we caution counsel to choose his words more carefully in the future.

Footnote 4: The author of the presentence report erroneously indicated in the report that defendant was not eligible for youthful offender status. It is therefore unclear whether the corresponding lack of recommendation from the author should be given much weight, particularly in light of the substance of the report.

Footnote 5: On my colleagues' assessment that defendant's conduct reflected a measure of forethought that is inconsistent with the aims of youthful offender status, I would merely note that the sequence of events from defendant's receipt of the text to come outside with a knife to his actual criminal act spanned a matter of minutes. That is precisely the type of "hasty or thoughtless" conduct warranting measured consideration of youthful offender status (People v Drayton, 39 NY2d 580, 584 [1976]).

Footnote 6: The Legislature amended the youthful offender status statute in 2021 (see L 2021, ch 552, §1), permitting "individuals [to seek] a second chance to receive a youthful offender determination so they can find relief from the onus of a criminal record" (Assembly Mem in Support, Bill Jacket, L 2021, ch 552 at 6). In defendant's case, he will first be eligible for a second chance at youthful offender status five years after the completion of his sentence, when he will be nearly 30 years of age (see CPL 720.20 [5]). Although defendant will ostensibly be able to avail himself of that opportunity, I believe that according youthful offender status now is the better course of action in order to relieve him of "the onus of a criminal record" upon release and increase his chances of "fully integrat[ing] into [his] communit[y] without being continuously stigmatized for mistakes made" as an 18-year-old college student with an otherwise unblemished record (Assembly Mem in Support, Bill Jacket, L 2021, ch 552 at 6).

Footnote 7: While it is true that defendant was only three months shy of 19 when the offense was committed, which would preclude his eligibility for youthful offender status, that fact is not an overly compelling reason to decline invocation of our interest of justice jurisdiction. The availability of youthful offender status reflects the Legislature's acknowledgement that individuals who commit crimes in that age range have little appreciation for the long-term consequences of their conduct (see Miller v Alabama, 567 US 460, 472 [2012]; Graham v Florida, 560 US 48, 68 [2010]; Roper v Simmons, 543 US 551, 569 [2005]), and recent research reflects that such diminished appreciation continues well beyond the permissible age range for youthful offender status (see Kevin Lapp, Young Adults & Criminal Jurisdiction, 56 Am Crim L Rev 357, 358 [2019]; Alexandra O. Cohen et. al., When Does A Juvenile Become an Adult? Implications for Law and Policy, 88 Temp L Rev 769, 783 [2016]; Jenny E. Carroll, Brain Science and the Theory of Juvenile Mens Rea, 94 NC L Rev 539, 580-581 [2016]). Accordingly, although one might fairly state that a defendant who is at the younger end of the age spectrum at the time of his or her criminal offense might have a more persuasive position in requesting youthful offender status, that does not concomitantly establish that a defendant on the other end of that age range should have that held against him or her.